PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* JUAN J. GERARDINO and ENRIQUE VALEDÓN, Defendants and Appellants.

No. 2751. Argued January 24, 1927.—Decided July 20, 1927.

*Felipe Colón Díaz, José R. Gelpí* and *José Tous Soto* for the appellants. *José E. Figueras* for the appellee.

Mr. Justice Franco Soto delivered the opinion of the court.

Defendants Juan J. Gerardino and Enrique Valedón were convicted of conspiracy. The former was sentenced to six months in jail and $500 fine, and the latter to a fine of $200.

The defendants have appealed and assign twelve errors. Some of the errors assigned have been passed on today in case No. 2750, *People* v. *Juan J. Gerardino et al., ante,* page 173, in which the facts were more or less the same as those in the case at bar. We refer to the following: 1, objection that the government was represented by the district attorney of Mayagüez and special prosecuting attorney Samalea; 2, motion to dismiss the prosecution under subdivision 2 of section 448 of the Code of Criminal Procedure, and 3, denial of the motion for a bill of particulars. However, this motion does not appear from the record.

The fourth assignment is that the court erred in overruling a demurrer to the complaint. In the brief, however, there is only a mere reference to the filing of the motion, without any argument on its merits. Although the motion is not dated and does not show when it was presented, the record seems to indicate that it was made at the trial. This being so, the motion came too late for a consideration of the ground referring to the defective form or wording of the information. It is true that the appellants allege in the motion that the acts charged did not constitute the offense for which they were being prosecuted, but they do not. argue the merits of that allegation. However, a cursory reading of the information is sufficient to see that it established. the crime of

conspiracy with which the appellants were accused. In its pertinent parts the information reads as follows:

"The aforesaid Juan J. Gerardino and Enrique Valedón, of Ponce, P. R., within the municipal judicial district of Ponce, P. R., in or about the month of May, 1923, prior to the filing of this information, unlawfully, wilfully, maliciously and fraudulently combined, conspired and agreed to cheat and defraud The Manufacturers' Life Insurance Company, a foreign corporation authorized to do business in Porto Rico, and in pursuance thereof the aforesaid Juan J. Gerardino and Enrique Valedón insured one Arcadio Robles Cortés for $17,500 with the aforesaid Manufacturers' Life Insurance Co., informing that company that Arcadio Robles Cortés was in good health while the defendants knew that the said Robles at the time of his insurance, that is, in or about the month of May, 1923, was in poor health or ill, and under that pretense, wilfully and maliciously induced the said company to insure the said Robles for the sum of $17,500, in pursuance whereof the said company issued a policy in the name of Arcadio Robles Cortés, but the fraud was not consumed (sic) because the policy was canceled in or about November, 1923, . . ."

The fifth assignment discusses the motion, which was overruled by the trial court, for the return of certain documents alleged to have been unlawfully seized by the agents of The Manufacturers' Life Insurance Co. The appellants also refer lightly to this error in their brief. They refer to the testimony of Mayoral, alleging that the unlawful seizure had been proved. The document referred to in the motion is policy No. 287451 issued in the name of Arcadio Robles for $17,500, the beneficiary being Enrique Valedón in whose possession it was found. However, an examination of the testimony of Mayoral clearly shows that no compulsion whatever had been applied to Valedón for the delivery of the policy. Mayoral went to Peñuelas, the place of residence of the defendant, and the latter voluntarily delivered the policy to him and then signed voluntarily a discharge or cancellation on the back of the policy, admitting as the reason therefor that Arcadio Robles was sick when he applied for the insurance.

The sixth assignment refers to the admission in evidence of a certificate from the Superintendent of Insurance of Porto Rico containing no transcript of any document, but an opinion of that official. The certificate introduced in evidence reads as follows:

"Government of Porto Rico.—Department of Finance.—Bureau of Insurance.—I, Juan G. Gallardo, Acting Superintendent of Insurance, do hereby certify that The Manufacturers' Life Insurance Co. of Toronto, Canada, is a foreign corporation duly registered in Porto Rico and given by the Superintendent of Insurance a certificate authorizing it to do business in Porto Rico during the fiscal year 1922–1923 and is therefore duly authorized to carry on insurance business in Porto Rico during all the month of May, 1923.

"In witness whereof, and at the request of special prosecuting attorney Luis Samalea, I issue this certificate free of charge for Government business in San Juan, Porto Rico, on this the 23rd of January, 1924.

"(Signed)    Juan G. Gallardo,<br>
Acting Superintendent."

The prosecution stated that the purpose of the certificate was to show that The Manufacturers' Life Insurance Co. was a corporation of Toronto, Canada, duly registered and authorized to do business in Porto Rico, and as this was the purpose in presenting the document and the authenticity of the signature of the official who signed it had not been attacked, we do not find that the trial court erred in admitting it in evidence.

It is also alleged by the appellants in their argument on the seventh assignment that there was error in admitting in evidence as being authorized by defendant Enrique Valedón an application for insurance without identifying the signature of said defendant. If that was error it was not prejudicial because in his testimony Valedón admitted that he was the beneficiary under the policy issued for $17,500 which he canceled later under his signature.

The eighth assignment of error is the admission of the testimony of Mayoral who testified that it was Juan J. Gerar-

dino who had paid the premium for the two policies issued to Arcadio Robles, one for $17,500 payable to Enrique Valedón and another for $1,000 payable to Pedro J. Robles, a son of the insured.

The pertinent part of the testimony reads as follows:

"Q.—How much was the premium for the policy of $1,000? A.—I do not remember, I would have to see the policy. (The document is handed to the witness) $31.05. Q.—Annually? A.—Annually. Q.—And that for $17,500? A.—$543.40. Q.—Making a total 'of $574.45? Was that the amount of the annual premium for the two policies? A.—Yes, Sir. Q.—Had those premiums been paid? A.—Yes, Sir. Q.—Who paid them? A.—Arcadio Robles. Q.— How did he pay them? A.—By check. Q.—Whose check was it? A.—Juan José Gerardino's. Q.—Who is Juan José Gerardino? A.—One of the defendants here. Q.—Which of the two? A.—The one on the farther side (pointing to him). (Defense) We object to the evidence of the payment by check. Let the check be produced. Q.—What did you do with that check? A.—I deposited it in the bank. (Defense) We object because the question of the check had been stricken out. (Argument) Judge: The question is sustained. Prosecution: Q.—What became of the check? A.—I deposited it in the bank to my current account. Q.—Whose current account? A.—Mine. Q.—Was that check returned to you? A.—No. Q.— Was that check credited to your current account? A.—It was; that is what I sent it to the bank for. Q—Was that check credited to your current account? A.—Yes, Sir."

In the first place Mayoral testified to a fact within his personal knowledge. He testified to having received a check drawn by Gerardino in favor of Arcadio Robles covering the amount of the premiums on the two policies. The check was cashed and credited to the current account of the witness and of course it would be returned to the drawer. It was like a receipt or voucher which was beyond the witness' reach. It was rather to the interest of Gerardino or any other drawer of a check to produce such document to show payment or delivery of cash in case of a denial of either. Therefore, we do not find that the court erred in allowing the witness to testify to the manner of collecting the premium.

In the ninth and tenth assignments of error it is contended by the appellants that the court erred in permitting the prosecution to attack the testimony of witness Angel M. Mayoral "without having shown surprise in another legal case," and because he was allowed to refresh his memory by reading a declaration made by him before the district attorney.

During the testimony of the witness Mayoral the following incident took place:

"Q.—When you went to see Enrique Valedón and had a talk with him what did he agree to? A.—To deliver the policy. Q.—And what else? Did he sign anything? A.—Not then. Q.—Are you quite sure? A.—Yes, Sir. Q.—Did you make any statement under oath to the special prosecuting attorney? A.—Yes, Sir. Q.—Attorney Samalea? A.—Yes, Sir. Q.—The statement you made is exactly the same as the one made here? (Defense) We object. Now, the Government is trying to impeach its own witness. We object to the manner in which it is going to be done. Judge: The court is of the opinion that the prosecution is within its rights. Prosecution: Q.—Did you not state before how that was done? You answered: 'Talking. . . (Objection from counsel for the defense who alleges that if the statements made by the witness are on record that should be read. The prosecution rebuts the objection from the defense). Judge: Objection overruled. Let the examination be proceeded with. Prosecution: Q.—Were you not asked, 'how did you succeed in doing that?' and you answered: 'Talking with the beneficiaries.' (Defense) We object to that way. Judge: The defense objects to the manner of putting the question? Defense: To the manner of putting the question. (Argument) Judge: What procedure are you going to follow? Defense: The usual question. Judge: Let the examination be proceeded with. Prosecution: 'Did you answer or is it not true that you said this: 'As that cancellation was made.' Defense: We object because nothing has been said previously regarding cancellation. Prosecution: The witness has said that he had not agreed to anything at all. Defense: The prosecution may proceed with the question. Prosecution: It is true or not that while you were examined by the special prosecuting attorney Samalea you were asked: 'How was that cancellation made?' and you answered: 'The agents of the company Font and Young having informed me that

in their opinion the insurance transaction showed fraud against the company on the part of the insured. . . I offered them my services to get the policies and have them returned for their cancellation and this I did by begging the beneficiaries to deliver them and to sign a discharge acknowledging the nullity of those policies.' Is that true? Subsequently that was done.''

Although it does not appear that the appellants took exception to the rulings of the court, however, as that evidence had been introduced in the municipal court, the parties agreed to submit the stenographic record of the testimony and to consider as excepted to all rulings of the court on the incidents which gave origin to exceptions.

Prior to the incident in question the witness had stated on being cross-examined by the defense that the policy had been returned for its cancellation owing to the threats of criminal prosecution from the manager of the company. What the prosecution tried then to do on examining again the witness was to refresh his memory by reminding him that he had previously made contrary statements; and this was admitted by the witness when he stated that no such threats had been made and explained in detail how he had secured the return and cancellation of the policy. The witness did not deny his previous statements when his memory was refreshed by the prosecution, and it did not become necessary to contradict him by proof of his having made them.

The eleventh assignment is that the court erred in allowing attorney Alberto S. Poventud to be called as a witness after the rule had been established that no witness would be admitted to testify who had not been sworn. Certainly that rule had been established, but the action of the court was not limited thereby, for a discretional question was involved to be determined by the court according to the circumstances of the case, and it has not been shown by the appellants that the court abused its discretion in modifying its rule.

The twelfth and last assignment of error refers to the weight of the evidence.

It appears from the government's evidence that the insured Arcadio Robles applied to the insurance company for two ordinary life policies, one for $17,500 with Enrique Valedón as beneficiary, and another for $1,000 payable to Pedro J. Robles, son of the insured. It was stated in the application that the insured was in perfect health and this was corroborated by the beneficiaries who also signed the document. The policies were issued and the respective premiums were paid by Juan J. Gerardino, one of the defendants. It was fully shown that at the time of the application Arcadio Robles was suffering from pulmonary tuberculosis and that he died from that disease. It was so testified by the doctor who treated him and an analysis of his sputa gave a positive reaction revealing the Koch bacillus. Notwithstanding the death of the insured, the beneficiaries agreed to the cancellation of the policies and a discharge was written and signed on the back thereof by which they accepted the premiums paid and admitted as the reason for the cancellation that the insured was sick at the time of his application for the insurance. It was shown also that Robles made a living by making electrical installations and did not earn more than four to five dollars a day. He spent his last moments in a miserable house of which Dr. Montalvo gave a dreadful and pathetic description. Evidence was introduced regarding other policies issued to other persons suffering also from pulmonary tuberculosis where the intervention of Gerardino was shown as paying the premiums and the policies had been canceled for the same reason.

The evidence for the defense attempted to show that Arcadio Robles had a healthy appearance and was not suffering from any disease. It was also attempted to show that the interest of Valedón as beneficiary originated in a loan of $2,200 made by him to the insured. The court, however,

did not give credence to that evidence and did not commit error, nor did it act from prejudice, passion, or partiality in adjusting the conflict in the evidence against the defendants.

For the foregoing reasons the judgment appealed from must be affirmed.